Opinion
 

 MORRIS, J.
 

 Plaintiffs, California Teachers Association and Fullerton Secondary Teachers Organization, appeal from a judgment on the pleadings in favor of defendant, Board of Trustees, Fullerton Union High School District (District). The complaint sought a judgment declaring Education Code section 18256
 
 [1]
 
 unconstitutional and an injunction preventing defendant from entering into contracts with private schools to provide driver training instruction to pupils of the District as authorized by said section. The trial court entered judgment on the pleadings upholding the constitutionality of Education Code sections 41913-41919 and the validity of agreements executed pursuant thereto.
 

 The complaint alleged that prior to the 1976-1977 school year, the District operated a driver training program for the pupils enrolled in the schools of the District with instruction provided by the regular certificated
 
 *252
 
 teaching staff of the District. During the 1975-1976 school year, the District, pursuant to former section 18256 of the Education Code, entered into a contract with the American Institute for Driver Improvement, Inc., for the latter to provide a course of instruction for the pupils of the District in behind-the-wheel driver training. As a result of the contracting out of the District’s program, the certificated teaching staff of the District was reduced by 20 teaching positions for the 1976-1977 school year.
 

 Education Code section 41913 provides in pertinent part as follows: “Notwithstanding any other provision of law, the governing board of any school district maintaining secondaiy schools, may, subject to Sections 41913 to 41919, inclusive, enter into contracts with approved private driver training schools to provide to any or all of the eligible enrolled students of the district, the automobile driver training as provided pursuant to Section 51852. No such contract shall be valid unless approved by the Superintendent of Public Instruction. The driver training provided under contract by an approved private driver training school shall be under the exclusive control and management of the governing board of the school district and shall comply with all rules and regulations of the State Board of Education relating to driver training offered by the public schools, except that a driver training instructor of the approved private driver training school shall not be required to possess any teaching credential or certification document of any kind except as required by the Driving School Department of the Department of Motor Vehicles. Nothing in this section shall prohibit the governing board from entering into contracts with more than one approved private driver training school and apportioning students among such schools.”
 

 Appellants did not plead the invalidity of any provision of the contract or that the contract failed to comply with the statutory authorization. Rather, appellants’ contention below, and the basis of this appeal, is that the statutes authorizing school districts to enter into contracts with approved private driver training schools to provide automobile driver training violate the California Constitution in that they authorize the transfer of a part of the public school system in violation of article IX, section 6, and they authorize the appropriation of public money for the support of schools not under the exclusive control of the officers of the public schools in violation of article IX, section 8.
 

 
 *253
 
 I
 

 Education Code sections 41913-41919 do not authorize contracts in violation of the provisions of article IX, section 6.
 

 The phrase “Public School System” has been a part of the California Constitution since its adoption in 1879. Article IX, section 5, then and now, provides that the Legislature “shall provide for a system of common schools,” and article IX, section 6, since 1879 has set forth what constitutes the public school system. In 1946 section 6 was amended to provide in pertinent part: “The Public School System shall include all kindergarten schools, elementary schools, secondaiy schools, technical schools, and State colleges, established in accordance with law and, in addition, the school districts and the other agencies authorized to maintain them. No school or college or any other part of the Public School System shall be, directly or indirectly, transferred from the Public School System or placed under the jurisdiction of any authority other than one included within the Public School System.”
 

 Undoubtedly appellants would concede that driver training was no part of the “Public School System” as originally provided by the Legislature in response to the constitutional mandate of 1879. In fact, it was not until 1968 that automobile driver education was adopted as a part of the course of study for grades 7 through 12. (See former Ed. Code, § 8571, enacted by Stats. 1968, ch. 182, § 31, pp. 463-464, now Ed. Code, § 51220.) Nevertheless, appellants contend that, once the Legislature included driver education and driver training as a part of the course of study,
 
 [2]
 
 the course became a part of the public school system so that the Legislature is without power to authorize the school districts to provide for the instruction by any one other than school district personnel because to do so would violate the constitutional prohibition against the transfer of a part of the public school system.
 

 Appellants have confused two very distinct concepts, i.e., the “system” and die “curriculum.” The “Public School System” is just what the language of article IX, section 6 says it is—the system of schools required
 
 *254
 
 by the Constitution to be provided by the Legislature, namely, kindergarten schools, elementary schools, secondary schools, technical schools, state colleges, and the administrative agencies authorized to maintain them. As the Supreme Court pointed out in
 
 Kennedy
 
 v.
 
 Miller
 
 (1893) 97 Cal. 429, 432 [32 P. 558], “The term ‘system’ itself imports a unity of purpose as well as an entirety of operation, and the direction to the legislature to provide ‘a’ system of common schools means
 
 one
 
 system which shall be applicable to all the common schools within the state. In pursuance of this direction, the legislature has enacted [statutes
 
 [3]
 
 ] wherein the system outlined in the constitution is amplified, and provision made for the organization of school districts, and the election of the officers thereof, as well as of the officers authorized by the constitution, and defining their powers and duties, and also providing for the proper application of the revenue from the state school fund, and for the raising of additional money by taxation for the support of the common schools.” (See also,
 
 Serrano
 
 v.
 
 Priest
 
 (1971) 5 Cal.3d 584, 595 [96 Cal.Rptr. 601, 487 P.2d 1241];
 
 California Sch. Employees Assn.
 
 v.
 
 Sunnyvale Elementary Sch. Dist.
 
 (1973) 36 Cal.App.3d 46, 57 [111 Cal.Rptr. 433].)
 

 It is this system that may not be transferred directly or indirectly in whole or in part. Article IX, section 6, of the Constitution is designed to insure that the important task of public education is provided by, and under the guidance of, one uniform
 
 system
 
 of public schools and that the ability of that
 
 system
 
 to discharge its duty fully is not impaired by the dissipation of authority and loss of control that would result if parts of the system were transferred from the system or placed under the jurisdiction of some other authority.
 

 The “curriculum,” as defined in Education Code section 51013, means the courses of study, courses, subjects, classes and organized group activities provided by a school. In establishing guidelines for educational programs, including the course of study for grades 7 through 12 (which includes provisions for automobile driver education), the Legislature formally recognized that, “because of the common needs and interests of the citizens of this state and the nation, there is a need to establish a common state curriculum for the public schools, but that, because of economic, geographic, physical, political and social diversity, there is a need for the development of educational programs at the local level, with
 
 *255
 
 the guidance of competent and experienced educators and citizens. Therefore, it is the intent of the Legislature to set broad minimum standards and guidelines for education programs, and to encourage local districts to develop programs that will best fit the needs and interests of the pupils.” (Former Ed. Code, § 7502, Stats. 1968, ch. 182, § 31, p. 460.)
 
 [4]
 

 Clearly the curriculum and the courses of study included in the common state curriculum are not prescribed by the Constitution, but are details left to the discretion of the Legislature. They do not constitute a part of the system, but are simply a function of that system. If the Legislature in its wisdom finds, as it has in numerous areas,
 
 [5]
 
 that a course can best be fashioned to meet the needs of the citizens of this state and of the pupils in the public schools by authorizing the local districts to contract for teaching services by professionals in particular fields, the Legislature has the power to do so.
 
 [6]
 
 Such delegation of the teaching function, if done under the control and supervision of the school district, does not constitute a transfer of a part of the public school system in violation of article IX, section 6. (Cf.
 
 California Sch. Employees Assn.
 
 v.
 
 Sunnyvale Elementary Sch. Dist., supra,
 
 36 Cal.App.3d 46, 55-58.)
 
 [7]
 

 
 *256
 
 However, we agree with appellants that if the control and management of the driver training program were to be transferred to a private school, there would be a violation of article IX, section 6. This would be true not because the teaching function may not be transferred, but because the school districts and the other agencies authorized to maintain the schools within the public school system are also a part of the system, and article IX, section 6, prohibits placing any part of the system under the jurisdiction of any authority other than one included within the system. A transfer of control would indirectly transfer a part of the administrative system.
 

 Section 41913 of the Education Code does not authorize the transfer of control of the driver training course or authorize its placement under the jurisdiction of any authority other than the school district. To the contrary, section 41913 specifically provides that the driver training provided by contract “shall be under the exclusive control and management of the governing board of the school district. . . .”
 

 We conclude that Education Code sections 41913-41919 do not violate article IX, section 6, of the California Constitution.
 

 II
 

 Education Code sections 41913-41919 do not authorize the gift of public funds in violation of article IX, section 8, of the California Constitution.
 

 Article IX, section 8, provides: “No public money shall ever be appropriated for the support of any sectarian or denominational school, or any school not under the exclusive control of the officers of the public schools . . . .”
 

 Appellants’ contention that sections 41913-41919 authorize the appropriation of public money for the support of contracting private schools in violation of this constitutional provision is specious. The payment to be made to private schools pursuant to contracts for driver training executed under the authority of the Education Code simply constitutes the consideration for the services to be provided by the private school. Thus, public money appropriated and paid under these contracts is appropriated for the purpose of providing driver training. Appellants do not contend, indeed could not successfully argue, that driver training is not a
 
 *257
 
 proper function of the public schools or that it does not serve a public purpose.
 

 Article IX, section 8, like article XVI, sections 5 and 6,
 
 [8]
 
 relates to the making of any gift of money or thing of value for the purpose or support of an institution not under the control of the state institution or agency involved. It is well settled that the primaiy question to be considered in determining whether an appropriation of public funds is to be considered a gift is whether the funds are to be used for a public or private purpose. If they are to be used for a public purpose, they are not a gift within the meaning of this constitutional prohibition.
 
 (County of Alameda
 
 v.
 
 Janssen
 
 (1940) 16 Cal.2d 276, 281 [106 P.2d 11, 130 A.L.R. 1141].) “The benefit to the state from an expenditure for a ‘public purpose’ is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefited therefrom.”
 
 (Id.,
 
 at p. 281.)
 

 Thus, in order for payment under the contracts here involved to constitute an appropriation of public money in violation of article IX, section 8, the payment must be without adequate consideration. (See
 
 California Sch. Employees Assn.
 
 v.
 
 Sunnyvale Elementary Sch. Dist., supra,
 
 36 Cal.App.3d 46, 59; see also
 
 California School Emp. Assn.
 
 v.
 
 Sequoia etc. School Dist.
 
 (1969) 272 Cal.App.2d 98, 112 [77 Cal.Rptr. 187].) Appellants have not contended that the payment provision of Education Code section 41915 would permit payment of an amount in excess of the value of the benefit being conferred on the district by the services to be performed by the private school furnishing the driver training.
 

 Moreover, the statute on its face appears simply to provide for adequate consideration subject to the same limitation that would be applicable to a program provided by the district itself. (See Ed. Code, §§ 41915, 41900, 41903.)
 

 Appellants’ reliance on
 
 Board of Trustees
 
 v.
 
 Cory
 
 (1978) 79 Cal.App.3d 661 [145 Cal.Rptr. 136] is misplaced. In that case the Court of Appeal concluded that Education Code sections 69790 to 69793 are unconstitutional as providing for the expenditure of state funds in violation of article IX, section 8. It is clear from a careful reading of the opinion that the court found the payments authorized by statute to be made to private medical schools to constitute a subsidy to the private schools, not
 
 *258
 
 consideration for services rendered. The court was careful to point out that “a payment of funds in the amount of tuition for education
 
 directly
 
 to a student or to a public or private school on behalf of a special student ... is not unconstitutional, since any benefit to a private school [in such circumstances] is an ‘incidental’ or ‘indirect’ effect of the direct benefit to the
 
 student.” (Id.,
 
 at p. 666; see also
 
 Veterans’ Welfare Board
 
 v.
 
 Riley
 
 (1922) 189 Cal. 159 [208 P. 678, 22 A.L.R. 1531].)
 

 We conclude that Education Code sections 41913-41919 do not authorize the appropriation or expenditure of public funds in support of any school not under the exclusive control of the officers of the public schools. There is no violation of article IX, section 8 of the California Constitution.
 

 Appellants attempt to argue on appeal that the terms of the contract between respondent and the American Institute for Driver Improvement, Inc., do in fact transfer control to the private school because of a provision in the contract stating that, “the Contractor, ... in performance of this Agreement, shall act in an independent capacity and not as officers or employees or agents of the District.” As previously noted, appellants did not plead the invalidity of any provision of the contract and the trial court did not pass upon the particular contract. The judgment appealed from is a judgment upon the pleadings. The effect and consequences of the various provisions of the contract are not before us on this appeal.
 

 Judgment affirmed.
 

 Gardner, P. J., and McDaniel, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied August 24, 1978. Bird, C. J., was of the opinion that the petition should be granted.
 

 [1]
 

 Section 18256 was repealed and reenacted without change as section 41913. (Stats. 1976, ch. 1010, §§ 1, 2, pp. 2384, 3294.)
 

 [2]
 

 It should be noted that driver training, the laboratory phase of driver education, is not mandated but is permissive. It is left to the local governing board to prescribe regulations determining who can profit by and who shall receive instruction in driver training. (See Ed. Code, § 51850 et seq.) However, since our conclusions do not depend on this distinction, we do not pursue it here.
 

 [3]
 

 The court referred to chapter III of title III, part III, of the Political Code. Such provisions are now found in the Education Code.
 

 [4]
 

 The section was amended in 1970 to add the words “pursuant to stated philosophy, goals, and objectives” at the end (Stats. 1970, ch. 904, § 1, p. 1646) and in that form was repealed and reenacted in 1976 as Education Code section 51002 (Stats. 1976, ch. 1010, §§ 1, 2, pp. 2384, 3628).
 

 [5]
 

 Education Code sections 8090-8093 authorize contracts with private postsecondary schools for vocational skill training to public school students.
 

 Education Code sections 51740-51741 authorize school districts to provide instruction for public school students through correspondence courses conducted by any college or university in California that is accredited for teacher training, many of which are private institutions.
 

 Education Code sections 51760-51770 authorize work experience education programs, which may involve placement with a private employer. Education Code section 51860 authorizes instruction by law enforcement agencies in bicycle safety.
 

 [6]
 

 Of course, courses in some areas, e.g., basic academic subjects like reading, writing, mathematics, grammar, etc., may be less suitable for such programs than courses in other areas, e.g., those mentioned in footnote 5, but that determination has been left to the Legislature, and is not dictated by the Constitution.
 

 [7]
 

 The
 
 Sunnyvale
 
 case involved a contract for research and development activities for the school district, rather than a contract for teaching. Whether the activity is teaching, research and development, or something else does not matter; the primary question is, as amplified above, whether there is a transfer of control. Inasmuch as the court in
 
 Sunnyvale
 
 rested its decision on an analysis of transfer of control, any implication in the opinion that a determinative distinction may be drawn between teaching and nonteaching functions was unnecessary.
 

 [8]
 

 Formerly article XIII. sections 24 and 25 (formerly art. IV, §§ 30 and 31).