OPINION OF THE COURT
Beverly S. Cohen, J.
This is a motion for summary judgment, pursuant to CPLR 3212, brought by defendants on the eve of trial seeking *1014 dismissal of the complaint in a wrongful death action. The suit was brought by Ermelinda Acosta as administratrix of the estate of Luis Acosta, deceased, against Alfredo Fuentes and Raymond Fuentes, allegedly doing business as La Perla Cuchifrito and Fuentes Restaurant Inc.
The facts are as follows. On October 31, 1987, while eating a meal at a restaurant at 107 Clinton Street, New York, New York, plaintiff's decedent choked on some food and, unable to speak, was carried to the sidewalk outside the premises by restaurant employees. Decedent remained on the sidewalk until an ambulance arrived approximately half an hour later in response to a 911 call placed by a restaurant employee. He died on November 19, 1987, without ever regaining consciousness.
Plaintiff alleges that defendants, "caused plaintiff’s decedent to choke and ultimately sustain wrongful death by serving him improper, unhealthy and/or unsafe food that caused him to choke and failed to aid and assist plaintiff’s decedent while he was in distress and choking. Defendants further exacerbated plaintiff’s decedent’s condition by carrying the decedent outside the restaurant premises and leaving decedent on the sidewalk without rendering aid and comfort to him, leaving him on the sidewalk to suffer and subsequently die.”
Defendants claim to be immune from tort liability under Public Health Law § 1352-b.
The statute (which requires restaurant proprietors to display first aid instructions) provides, in pertinent part, as follows:
§ 1352-b. "Public eating establishments; first aid instructions concerning food lodged in throat; liability * * *
"4. No duty to act. Nothing contained in this section shall impose any duty or obligation on any proprietor, employee or other person to remove, assist in removing, or attempt to remove food from the throat of the victim of a choking emergency.
"5. Immunity from liability. Notwithstanding any inconsistent provision of law or ordinance, a proprietor, employee or other person who voluntarily and without expectation of monetary compensation removes, assists in removing, or attempts to remove food from the throat of the victim of a choking emergency in accordance with the instructions adopted by the commissioner shall not be liable for damages for injuries alleged to have been sustained by such victim or *1015 for damages for the death of such victim alleged to have occurred by reason of an act or omission in the rendering of such emergency assistance unless it is established that such injuries were, or such death was, caused by gross negligence on the part of such proprietor, employee or person.”
Plaintiff contends that despite the statute’s enactment, defendants owed plaintiff’s decedent the duty of care imposed on innkeepers by the common law, and the fact that a sign was posted in the restaurant in accordance with the statute established the foreseeability of a choking incident. Defendants maintain that the immunity afforded by Public Health Law § 1352-b (5) absolves restaurant owners from all civil liability if a patron chokes on food in the premises. They bolster this argument with the theory that the Legislature’s enactment of Public Health Law § 1352-b evidences a desire to curtail restauranteurs’ liability as the public policy of the State.
It seems clear that the intent of the Legislature in enacting Public Health Law § 1352-b was to save lives by encouraging use of the Heimlich Maneuver. As a matter of public policy, the statute is designed to further the public’s ability to render aid in cases of a choking emergency without imposing the economic burden of such aid on the restaurant owners, or other persons attempting to render aid. Defendants are correct in their contention that Public Health Law § 1352-b absolves them from a duty to aid plaintiff’s decedent and from liability for failure to administer the Heimlich Maneuver. The statute explicitly states that there is no "duty or obligation on any proprietor, employee or other person to remove, assist in removing, or attempt to remove food from the throat of the victim of a choking emergency”. (Public Health Law § 1352-b [4].) If defendants and their employees had done nothing at all beyond calling 911, they would be entitled, under the statute, to summary dismissal of the action absent proof by plaintiff that a defect in the food itself caused decedent to choke.
Defendants’ application of the law to the facts, however, is not accurate. Here, defendants’ employees, by carrying plaintiff’s decedent outside, took an action outside the scope of the statute. Thus, they may not invoke the immunity afforded by section 1352-b (5), as a matter of law. By taking this further step (which was not an attempt to render the posted first aid instructions in accordance with the statute) of removing plaintiff’s decedent from the premises, the defendants might have incurred liability outside of the statute.
*1016 In order for the plaintiff to establish a cause of action sounding in negligence, "he must meet the initial burden of showing, (1) the existence of a duty flowing from defendant to plaintiff; (2) a breach of this duty; (3) a reasonably close causal connection between the contact and the resulting injury; and, (4) actual loss, harm or damage” (Febesh v Elcejay Inn Corp., 157 AD2d 102, 104, lv denied 77 NY2d 801).
It is well settled that even where no original duty exists, "[w]here a person voluntarily assumes the performance of a duty, he is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task” (Wolf v City of New York, 39 NY2d 568, 573; see also, Moch Co. v Rensselaer Water Co., 247 NY 160).
Here, defendants allege that the decedent was taken outside because it was very hot and stuffy in the restaurant and they thought the fresh air would help him. Therefore, the question is whether they acted prudently in the circumstances.
The Court of Appeals has adopted the standard set forth in Restatement (Second) of Torts § 324, which is that: " '[o]ne who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by * * * discontinuing his aid as protection, if by so doing, he leaves the other in a worse position than when the actor took charge of him’ ” (Parvi v City of Kingston, 41 NY2d 553, 559).
To establish defendants’ breach of a duty assumed, plaintiff must show that they, "undertook to provide a service and did so negligently [and] their conduct in undertaking and service somehow placed [decedent] in a more vulnerable position than he would have been in had [they] never taken any action” (Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 522). The query is whether the defendants had advanced to such a point as to have launched a force or instrument of harm, or had stopped where inaction is, at most, a refusal to become an instrument of good (see, Moch Co. v Rennselaer Water Co., supra).
In an analogous case, where a storekeeper voluntarily undertook to give medical aid to a person who became ill in the store, and segregated her from the public, the court found that defendant had deprived the person of an opportunity to be aided by bystanders, and refused to grant a motion to dismiss for failure to state a cause of action (Zelenko v Gimbel Bros., 158 Misc 904, affd without opn 247 App Div 867). Here, plaintiff’s decedent was removed from the vicinity of the *1017 restaurant’s interior, where the first aid instructions were posted, to the public sidewalk.
The motion before this court, however, is one for summary judgment, and, accordingly, to defeat the motion, the plaintiff is required to lay bare her proofs. Plaintiff fails to offer any evidence to suggest that the street was more dangerous; in that, for example, there were other patrons in the restaurant who may have assisted plaintiffs decedent if he had not been removed. Rather, the sworn evidence of the witnesses offered by plaintiff states that several people had gathered around plaintiffs decedent and tried to help him after he was deposited on the public sidewalk.
Moreover, if plaintiffs decedent was already doomed to die before defendants removed him, then, the "affirmative action” duty is not applicable. Defendants assert that their acts did not cause the decedent’s death. Defendants, in fact, suggest that by moving him, they facilitated the EMS rescue efforts. The autopsy report indicates that decedent’s death was caused by "mechanical asphyxia by choking on food”. Plaintiff does not offer any evidence that by moving decedent, defendants exacerbated the choking; but, instead, plaintiff relies on the evidence that defendants did not render any further aid to the plaintiffs decedent after removing him to the street. When there is evidence of a possible cause for the incident for which defendants would not be responsible (e.g., failure to render first aid), in order to recover, plaintiff must show that defendants’ act was a proximate cause of the injury (Taylor v City of Yonkers, 105 NY 202). Plaintiff here has not established any causal connection between the moving of the decedent out of the restaurant and his death.
Generally, the question of proximate cause is to be decided by the trier of fact (see, Deridiarian v Felix Contr. Corp., 51 NY2d 308, 313). However, before the court may submit a case to the jury, it must be satisfied that the plaintiff has established some facts and circumstances from which causation may be reasonably inferred. Here, despite extensive discovery, the only evidence as to the cause of the incident which injured decedent is that he choked, and, as a matter of law, the court finds that the subsequent actions of the defendants were not the proximate cause of decedent’s injuries (see, e.g., Colban v Petterson Lighterage & Towing Corp., 19 NY2d 794, 796).
To recapitulate, the court finds that, as a matter of statutory law, defendants incurred no liability based on their *1018 failure to administer the Heimlich Maneuver or to render assistance to a choking patron. To the extent that defendants assumed a duty by moving their patron, plaintiff has failed to offer any evidence to rebut defendants’ contentions that decedent’s injuries were neither caused nor exacerbated by these affirmative acts. Accordingly, defendants are entitled to judgment in their favor.