*300 OPINION OF THE COURT
Joan B. Lobis, J.
Plaintiffs have brought the present motion to vacate a prior order of this court which granted Dow Chemical’s motion for summary judgment dismissing the complaint against it. In that decision, this court noted that Judge Pointer had previously rejected all of plaintiffs’ theories for imposing liability on Dow Chemical and stated that it saw no reason to deviate from Judge Pointer’s decision. After this court issued its decision, Judge Pointer vacated and set aside his earlier order granting summary judgment in favor of Dow Chemical with respect to the direct liability tort claims on the ground that there were issues of fact as to whether there was a negligent undertaking claim as against Dow Chemical. Judge Pointer specifically stated that "the decision that summary judgment cannot be granted as to Dow Chemical with regard to negligent undertaking is based on the court’s conclusion that under the substantive law of at least some states — though not necessarily all states — the evidence would create a jury question in federal court.” In reaching this determination, Judge Pointer only considered plaintiffs’ negligent undertaking claim and did not consider any of the other theories of direct liability. Judge Pointer also specifically noted that his decision would not bar a motion for summary judgment or for judgment as a matter of law filed in a case applying the law of a particular State. As will be explained more fully below, this court will not vacate its prior decision despite the subsequent ruling of Judge Pointer as it finds that there is no valid direct liability claim against Dow Chemical under New York law.
Although plaintiffs have asserted a number of theories against Dow Chemical in their complaint, the theory on which they appear to base the present motion to vacate is the negligent undertaking claim. Thus, the issue to be resolved by this court is whether plaintiffs can state a negligent undertaking claim against Dow Chemical under New York law.
The undisputed facts establish that Dow Chemical never designed breast implants, manufactured breast implants, sold breast implants, tested breast implants for safety or opined about the safety of breast implants.* Plaintiffs argue, however, that Dow Chemical can be liable under a negligent undertak *301 ing theory because of testing and research done by Dow Chemical with respect to silicone — that Dow Chemical should be held directly liable for negligently testing and researching silicone for toxicity, biological activity and safety. The plaintiffs claim that Dow Chemical failed to exercise reasonable care in performing its research and testing on silicone.
When Judge Pointer held that the research and testing performed by Dow Chemical could give rise to a duty in favor of the plaintiffs, he relied on the fact that it was foreseeable that users of medical implants that contained silicone could be harmed if Dow Chemical failed to exercise reasonable care in performing its services. However, under New York law, the mere fact of foreseeability is not sufficient by itself to create a duty to exercise reasonable care.
It is well established that a defendant cannot be held liable on a negligence claim unless the defendant owes a duty of care to the plaintiff. (See, Pulka v Edelman, 40 NY2d 781, 782 [1976].) Moreover, the question of whether a duty is owed in the first instance is a legal issue to be resolved by the court. (See, Waters v New York City Hous. Auth., 69 NY2d 225, 229 [1987].) "While moral and logical judgments are significant components of the analysis, we are also bound to consider the larger social consequences of our decisions and to tailor our notion of duty so that 'the legal consequences of wrongs [are limited] to a controllable degree’.” (Supra, at 228.) The Court of Appeals has expressly held that under New York law, "[f]oreseeability of injury does not determine the existence of duty.” (Eiseman v State of New York, 70 NY2d 175, 187 [1987]; see also, Waters v New York City Hous. Auth., 69 NY2d, at 231, supra; Pulka v Edelman, 40 NY2d, at 785, supra.)
In Eiseman (supra), the plaintiff brought an action against the State of New York arising from the rape and murder of a college student by a conditionally released prisoner who had been enrolled at a college. The trial court had initially held that the State was liable for the student’s death on the ground that the State was negligent when the prison physician omitted from a medical report submitted to the college that the murderer had been a heroin addict, had a history of mental disorder and had made several suicide attempts. The Court of Appeals dismissed the complaint on the ground that the physician did not owe any duty to all the individual students at the college. The Court noted that the physician clearly owed a duty of care to his patient and to the persons he knew or reasonably should have known were relying on him for this ser *302 vice to his patient, but that the physician did not undertake a duty to the community at large. (Supra, at 188.)
The Court of Appeals discussed in Eiseman (supra) what showing must be made to establish a negligent undertaking claim. The Court stated that a defendant may be held liable for negligence when there is a misrepresentation or nondisclosure on the part of defendant which misleads plaintiff to her detriment. (Supra, at 187.) The basis for the liability is that the misrepresentation or nondisclosure leads the plaintiff to forego action that she might otherwise have taken to protect herself. (Supra.) According to the Court: " 'Liability in such cases arises only when there is a duty * * * to give the correct information * * * There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally, the relationship of the parties * * * must be such that * * * the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.’ ” (Supra, at 187-188.) The Court of Appeals noted that when it applied these standards in commercial actions for negligent preparation of financial reports, it has also required actual privity or "something approaching privity, such as conduct on the part of defendant linking defendant to plaintiff which evinces defendant’s understanding of plaintiff’s reliance.” (Supra, at 188.) According to the Court, it has "limited the universe of permissible plaintiffs because a failure to do so would impose a duty of reasonable care enforceable by any member of an indeterminate class of persons, present and prospective, known and unknown, directly or indirectly injured by any negligence.” The Court noted that "[t]he hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.” (Supra.)
In Waters (supra), the Court of Appeals once again dealt with the issue of the scope of a defendant’s duty in a negligence claim. The issue in that case was whether "the owner of an occupied urban building who has not kept the building’s security system in good repair may be held liable in tort solely because the building was used to complete a crime that began on a public street.” (Waters v New York City Hous. Auth., 69 NY2d, at 227.) The Court of Appeals noted that a landlord has a duty to take reasonable precautionary measures to secure the premises if it has notice of a likelihood of criminal intrusions posing a *303 threat to safety and that a building owner who breaches this duty may be held liable to an individual who is injured as a result of a reasonably foreseeable encounter proximately caused by the absence of adequate security. The Court held, however, that it would be inappropriate to impose liability in the case before it since "plaintiff had no connection whatsoever to the building in which her injuries ultimately occurred.” (Supra, at 228.) According to the Court, "the concept of a duty of care, which is essential to the law of negligence, has meaning only when it is considered in relation to both the harm that the duty exists to prevent and the class of individuals to whom it is owed.” (Supra, at 228-229.) The Court stated that two important factors in determining the scope of a duty are " ' "the relationship between the defendant and the [third] person who threatens the harm” ’ on the one hand and the ' "relationship between the defendant and the person exposed to harm” ’ on the other.” (Supra, at 229-230.) While the absence of the relationship of privity between the defendant and the injured party is not dispositive, the Court noted that considerations of privity are not " 'entirely irrelevant’ ” particularly when public policy is involved. (Supra, at 230.) The Court there held that the scope of the defendant’s landowner’s duty should only be limited to tenants and others who might reasonably be expected to be on the premises. According to the Court, "[a]n important consideration in this context is the fact that the landowner has no control over either the acts of the primary wrongdoer or the conditions on the public byways that make such acts all too commonplace.” (Supra.) The Court also noted that another significant factor was the "virtually limitless liability to which defendant and other landowners would be exposed if their legal obligations were extended to plaintiff and to all others in her position.” (Supra.)
Based on the foregoing standards enunciated by the Court of Appeals, this court finds that there was no duty on the part of Dow Chemical to the plaintiffs in this action. In the present case, there is only a tenuous connection between Dow Chemical and the ultimate purchasers of breast implants. Dow Chemical never provided or undertook to provide the plaintiffs with any services, any information or any product. Similarly, there is no evidence that the ultimate purchasers of the breast implants ever relied on Dow Chemical or any information Dow Chemical provided to Dow Corning in making the decision to receive breast implants. Moreover, there is no evidence that Dow Chemical had any contact with any of these plaintiffs or even knew their identity. Thus, plaintiffs cannot establish a *304 sufficient relationship between themselves and Dow Chemical to justify imposing a duty upon Dow Chemical.
Although Dow Chemical may have had a duty to the actual users of its research such as Dow Corning, that liability does not extend ad infinitum to any potential ultimate user of a product which contains a silicone component. Dow Corning has over the years been in the business of manufacturing silicone-related products for thousands of applications. If this court were to hold that Dow Chemical assumed a duty of care based on its silicone-related testing and consulting to every potential ultimate consumer of a product which contained silicone, the duty imposed on Dow Chemical would be indeterminate and infinite. This is not the law in New York State. (See, Eiseman v State of New York, supra; Waters v New York City Hous. Auth., supra.)
As the Court of Appeals noted in Waters (supra), one important issue that must be considered in determining the scope of a defendant’s duty is the extent of control that the defendant has over the ultimate injuries incurred by plaintiff. Dow Chemical has no control over the usage that silicone has or will be put to in the future based on its initial testing and studies of silicone. To impose liability on Dow Chemical for injuries incurred by ultimate consumers of all products that contain silicone, when Dow Chemical has no control over who manufactures silicone or who purchases silicone, flies in the face of well-established tort principles. It would also impose virtually limitless liability on Dow Chemical for actions and activities which are not in its control.
Although plaintiffs cite to a number of cases in support of their argument that this court should recognize a negligent undertaking cause of action as against Dow Chemical, these cases are inapposite. In all of these cases, unlike the present case, there was a direct relationship between the defendant upon whom the duty was imposed and the plaintiff in the action which created the basis for the negligent undertaking claim — i.e., the defendant had undertaken to perform a service for the plaintiff. (See, e.g., Nallan v Helmsley-Spear, Inc., 50 NY2d 507 [1980] [landlord owes duty to visitor on premises]; Florence v Goldberg, 44 NY2d 189 [1978] [city owed duty to school children to continue to provide crossing guard once it voluntarily assumed that duty]; Acosta v Fuentes, 183 AD2d 483 [1st Dept 1992] [once restaurant assisted patron choking on food, it had an obligation to act with due care].)
For example, in Nallan v Helmsley-Spear, Inc. (supra), the Court upheld a cause of action against a building owner by a *305 visitor who was attacked on the premises and injured. However, in Waters (supra), the Court of Appeals made clear that that liability of an owner of the premises only applied to persons who had some relationship with the owner and would not apply to anyone who was injured in the building. In the present case, unlike the cases on which plaintiffs rely, plaintiffs have failed to describe a relationship between Dow Chemical and the purchasers of the breast implants which imposes tort liability. Dow Chemical did not undertake to perform any services for these plaintiffs.

 Although one of Dow Chemical’s subsidiaries distributed breast implants in Europe at one time, none of the plaintiffs before this court ever received implants sold by such subsidiary.